```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
MARCIA ZUZUL,                    )
                                 )
            Plaintiff,           )
                                 )
     v.                          )      1:14CV251
                                 )
ROBERT A. MCDONALD,              )
Secretary of Veterans            )
Affairs, et al.,¹                )
                                 )
            Defendants.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned Magistrate Judge on Plaintiff's Objection to Notice of Substitution and Request for Hearing Regarding United States Attorney's Certification. (Docket Entry 13.) For the reasons below, the Court should deny Plaintiff's instant Objection and should substitute the United States for Defendant William F. Pearson, M.D.[2]

---

[1] Robert A. McDonald became the Secretary of Veterans Affairs on July 29, 2014, resulting in his substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The undersigned Magistrate Judge will enter a Recommendation in this matter because a decision to uphold the Attorney General's scope-of-employment certification amounts to a dismissal of all claims against Defendant Pearson. See 28 U.S.C. 636(b); Lee v. United States, 171 F. Supp. 2d 566, 578 (M.D.N.C. 2001) (Beaty, J.) (explaining that upholding scope-of-employment certification would eliminate court's subject-matter jurisdiction because United States has not waived sovereign immunity for intentional torts); see also Bass v. Hill, No. 1:06CV543, 2006 WL 3919620, at *1 (M.D.N.C. Oct. 16, 2006) (unpublished) (addressing the plaintiff's objection to

## BACKGROUND

Plaintiff's Amended Complaint alleges assault, battery, and defamation under North Carolina law against Defendant William Pearson, M.D., her co-worker at the Veterans Affairs Medical Center ("VAMC") in Salisbury, North Carolina. (Docket Entry 5 at 1, 22-24.) It also alleges various claims against Plaintiff's employer, the Department of Veterans Affairs, for discrimination, harassment, and retaliation based on gender and race under Title VII and 42 U.S.C. § 1981 (id. at 1, 16-21), which do not directly concern Plaintiff's instant Objection.

According to Plaintiff, at the VAMC, she works as a certified registered nurse anesthetist and Defendant Pearson works as an anesthesiologist. (Docket Entry 14 at 2.) Plaintiff contends that, while she and Defendant Pearson prepared to administer anesthesia to a patient, Defendant Pearson argued with Plaintiff about the patient-care plan and then pushed her away from the patient's bedside. (Id.) Plaintiff further alleges that, following "her efforts to seek redress for his misbehavior, [Defendant] Pearson [] engaged in a campaign to tarnish Plaintiff's professional reputation, to disgrace Plaintiff's professionalism and her abilities as a nurse anesthetist, and to disparage her professional skills to her colleagues and superiors at [the] VAMC."

---

scope-of-employment certification by recommendation), recommendation adopted, slip. op. (M.D.N.C. Jan. 11, 2007).

(Id. at 3.) In that regard, Plaintiff asserts that Defendant Pearson reviewed her charts without authorization, falsely accused her of improper charting and of failing to attend a scheduled procedure, and instigated a baseless performance review. (Id.) Finally, according to Plaintiff, Defendant Pearson assaulted Plaintiff a second time at a departmental meeting by yelling and pointing his finger at her regarding her purported failure to come to the VAMC while on call. (Id.)

The United States filed a Notice of Substitution as to Plaintiff's claims against Defendant Pearson based on the United States Attorney's certification (pursuant to the Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, codified at 28 U.S.C. § 2679(d)(1) and (2)) that, at all relevant times, Defendant Pearson acted within the scope of his federal employment. (Docket Entry 8 at 1-2.) Based on that determination, the United States concluded that, pursuant to the Federal Tort Claims Act ("FTCA"), as amended by the Westfall Act, "a suit against the United States [serves as] the exclusive remedy for [Plaintiff's] claims for damages arising from common law torts resulting from the actions of [Defendant Pearson] taken within the scope of [his] office or employment." (Id. (citing 28 U.S.C. 2679(b)(1)).)

Plaintiff now objects to the Notice of Substitution and asks the Court to deny the substitution, or in the alternative, to

provide for limited discovery and a hearing concerning whether Defendant Pearson's alleged tortious conduct occurred within the scope of his employment. (Docket Entry 13 at 1-2.) The United States responded (Docket Entry 16) and Plaintiff replied (Docket Entry 18).

**DISCUSSION**

The Westfall Act provides that, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action . . . in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).[3] However, the United States Supreme Court has ruled that "[this] statute is fairly construed to allow [plaintiffs] to present to the District Court their objections to the Attorney General's scope-of-employment certification." Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 436-37 (1995). In other words, "[t]he Attorney General's certification is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997).

---

[3] "By regulation, the United States Attorneys are authorized to issue [scope-of-employment] certifications on behalf of the Attorney General." Lee v. United States, 171 F. Supp. 2d 566, 572 n.3 (M.D.N.C. 2001) (citing 28 C.F.R. § 15.3(a)).

-4-

Judicial review of scope-of-employment certifications addresses concerns about "the Attorney General's incentive to grant certification when the United States [is] immune from suit, thereby shielding the federal employee from liability while not exposing the United States to liability [under the FTCA]." United States v. Al-Hamdi, 356 F.3d 564, 572 (4th Cir. 2004) (citing Gutierrez de Martinez, 515 U.S. at 427-28). The instant case presents such a scenario because the FTCA's waiver of sovereign immunity does not extend to the intentional torts alleged by Plaintiff. See 28 U.S.C. § 2680(h) (excluding assault, battery, libel, and slander from FTCA). Nonetheless, the Fourth Circuit has "[r]ecogniz[ed] the 'desirability of quickly resolving the scope-of-employment issue' because 'immunity under the Westfall Act, like other forms of absolute and qualified immunity, is an immunity from suit rather than a mere defense to liability,' [and the Fourth Circuit has] emphasized that 'the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act.'" Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000) (quoting Guitierrez de Martinez, 111 F.3d at 1154-55) (internal citations and some quotation marks omitted).

"When the [scope-of-employment] certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his

employment." Gutierrez de Martinez, 111 F.3d at 1152 (emphasis added). "To carry its burden, the plaintiff must submit 'specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.'" Borneman, 213 F.3d at 827 (quoting Gutierrez de Martinez, 111 F.3d at 1155). "To assist in this inquiry, the district court, in its discretion, may allow limited discovery or conduct an evidentiary hearing on the matter of scope of employment. However, such a hearing is unnecessary if the certification, pleadings, affidavits, and any supporting documents fail to reveal an issue of material fact." Lee v. United States, 171 F. Supp. 2d 566, 574 (M.D.N.C. 2001). "At all stages of the process, it is for the district court to weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues . . . to determine whether the certification should stand." Borneman, 213 F.3d at 827.

In considering whether a defendant acted within the scope of federal employment, "the district court must apply the respondeat superior law of the state in which the alleged tortious conduct occurred." Lee, 171 F. Supp. 2d at 574. Plaintiff's Amended Complaint alleges that Defendant's tortious conduct occurred in North Carolina. (Docket Entry 5 at 3-16.) "Although, under North Carolina law, the scope-of-employment issue would generally be one

for the jury to decide, under the Westfall Act and the FTCA, a 'plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the relevant state law would provide a jury trial.'" Lee, 171 F. Supp. 2d at 575 n.6 (quoting Gutierrez de Martinez, 111 F.3d at 1153).

Under North Carolina law, "'[t]o be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment.'" Matthews v. Food Lion, LLC, 205 N.C. App. 279, 282, 695 S.E.2d 828, 831 (2010) (quoting Troxler v. Charter Mandala Ctr., 89 N.C. App. 268, 271, 365 S.E.2d 665, 668 (1988)). In other words,

> If the act of the employee was a means or method of doing that which he was employed to do, though the act be unlawful and unauthorized or even forbidden, the employer is liable for the resulting injury, but he is not liable if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do.

Wegner v. Delly-Land Delicatessen, Inc., 270 N.C. 62, 66-67, 153 S.E.2d 804, 808 (1967). Similarly, the Fourth Circuit has characterized the North Carolina standard as involving consideration of "the degree to which the physical confrontation . . . represented an escalation of a work-related dispute and the degree to which is was motivated by personal animosity." Borneman, 213 F.3d at 829.

-7-

Although the intentional torts of employees generally do not occur within the scope of employment, Medlin v. Bass, 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990), North Carolina law clearly recognizes that some intentional torts do occur within the scope of employment, Borneman, 213 F.3d at 829 (citing cases).[4] For example, the North Carolina Supreme Court held that a jury could find that a collector of insurance premiums who drew a pistol on a policyholder refusing to pay acted within the scope of his employment if "the assault, however misguided and unauthorized, was committed as an incident of the employee's duties in the collection of accounts." Clemmons v. Life Ins. Co. of Ga., 274 N.C. 416, 422-23, 163 S.E.2d 761, 766 (1968). In contrast, the North Carolina Supreme Court held that, as a matter of law, a bus boy's unprovoked attack on a customer did not occur within the scope of his employment because "it was not for the purpose of doing anything related to the duties of a bus boy, but was for some undisclosed, personal motive." Wegner, 270 N.C. at 68, 153 S.E.2d at 809.

In the instant case, Plaintiff contends that the alleged torts occurred as "the result of [Defendant] Pearson's personal vendetta against Plaintiff." (Docket Entry 14 at 7.) In that regard,

---

[4] Under North Carolina law, assault, battery, and defamation qualify as intentional torts. See Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 286, 708 S.E.2d 138, 149 (2011) (defamation); Britt v. Hayes, 140 N.C. App. 262, 264, 535 S.E.2d 892, 894 (2000), reh'g on other grounds, 142 N.C. App. 190, 541 S.E.2d 761 (2001) (assault and battery).

Plaintiff asserts that, "[i]n arguing with and pushing Plaintiff, [Defendant] Pearson departed from his duties of patient care and the proper administration of preoperative medication . . . [demonstrating] no regard for the patient's safety and comfort . . . ." (Id.) With respect to the second alleged assault, according to Plaintiff, "[Defendant] Pearson's belligerence toward Plaintiff as he pointed his finger and yelled at her did not serve any professional purpose." (Id. at 8.) As to Plaintiff's defamation claim, she contends that "[m]anufacturing and repeating false allegations against Plaintiff [did] not [occur] within the scope of Pearson's employment; rather, [these activites] disrupted the smooth operation of the Anesthesia Department." (Id. at 9.) Plaintiff further notes that "[Defendant] Pearson's defamatory statements [were] accompanied by threats to take Plaintiff's license, house, and job, which further demonstrate his personal motivations to harm Plaintiff and are unrelated to his employment." (Id.)

In support of substitution, the United States underscores that all of Plaintiff's alleged torts occurred in the workplace and arose from workplace disputes. (Docket Entry 16 at 3-5.) In response, Plaintiff accuses the government of oversimplifying the scope-of-employment inquiry, noting that its "rudimentary explanation that Pearson was 'on the job' when the intentional torts were committed and cannot be held individually liable

. . . ignores the true analysis required by law." (Docket Entry 18 at 4.) Nonetheless, although not conclusive, "[e]vidence that disputes were work related, occurred on the employer's premises, and during work hours supports the conclusion that an employee was acting within the scope of his employment at the time of the alleged incidents." Whedbee v. United States, 352 F. Supp. 2d 618, 625-26 (M.D.N.C. 2005) (Beaty, J.) (applying North Carolina law).

Furthermore, as the United States has noted, Plaintiff has not identified in her instant filings any <u>specific</u> personal motivation for Defendant Pearson's alleged torts to suggest that they occurred outside the scope of employment. (See Docket Entry 14 at 1-10; Docket Entry 18 at 1-10; see also Docket Entry 16 at 9.)[5] Because the Fourth Circuit requires "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation," Borneman, 213 F.3d at 827, Plaintiff's mere repetition of the terms "personal vendetta" and "personal animosity" without explanation as to the source or nature of any

---

[5] Although Plaintiff's Amended Complaint asserts that race and gender motivated Defendant Pearson's alleged mistreatment of Plaintiff (see Docket Entry 5 at 3-16), Plaintiff makes no such assertions in her instant filings (see Docket Entry 13 at 1-2; Docket Entry 14 at 1-10; Docket Entry 18 at 1-10). In fact, Plaintiff states that she "seeks relief for assault, battery, and defamatory statements that are injuries separate from her civil rights claims." (Docket Entry 18 at 8.) For these reasons, the Court need not consider whether race or gender motivated the alleged torts or whether Title VII bars Plaintiff's tort claims, as the United States has contended (see Docket Entry 16 at 16-18).

-10-

personal motivations (see Docket Entry 14 at 5, 7-9) does not suffice to meet her burden of persuasion.

Instead, Plaintiff describes the "escalation of a work-related dispute," Borneman, 213 F.3d at 829, that started with an altercation at a patient's bedside - concerning issues related to patient care - and led to Defendant Pearson allegedly threatening to take Plaintiff's job, professional license, and house. (See Docket Entry 14 at 7-9.)  Although Plaintiff argues that Defendant Pearson's stated "goals [] to cause [Plaintiff] to lose her job, negatively affect her nursing license, personally sue her, and take her house . . . [reflect his] personal motives" (Docket Entry 18 at 2), Defendant Pearson's alleged desire for Plaintiff to suffer professional and personal harms does not necessarily reflect personal motivations.  Nor does the existence of some degree of personal motivation transform a work-related dispute into a personal vendetta. See Whedbee, 352 U.S. at 626 ("[I]t cannot be that any one factor, including whether personal motivations played a role, is dispositive."). To rebut the certification, Plaintiff must identify a personal motive independent of the work-related dispute, not a motive that arose from that dispute. See, e.g., Lee, 171 F. Supp. 2d at 576-77 ("Because Plaintiff, here, has failed to sufficiently establish that [Defendant's] actions arose from independent and personal motives unrelated to [Defendant's] managerial responsibilities, Plaintiff has failed to rebut the

certification by [the Attorney General] that [Defendant] was acting within the scope of his employment.").

For example, in a case involving a dispute between doctors at the National Institutes of Health ("N.I.H."), the Fourth Circuit (applying Maryland law) concluded: "Even if the defendants harbored ill will for [the plaintiff], we will not look at that ill will alone, but must look at the alleged acts and the doctors' duties at the N.I.H. in making the decision about whether they were acting within the scope of employment." Maron v. United States, 126 F.3d 317, 325 (4th Cir. 1997). In that case, after the plaintiff apparently discovered and reported to superiors scientific misconduct by his colleagues,

> [T]he doctors [allegedly] removed him from positions of power in the Lab, denigrated him in front of his patients, published false accusations about him, restricted his access to patients and on-going experiments, removed his name as co-author of several publications, declined to credit him for his work at the Lab, and told patients that he was no longer employed at the N.I.H.

Id. at 320. In affirming the district court's decision to uphold the scope-of-employment certification, the Fourth Circuit reasoned that the district court correctly declined "to consider only whether the defendant doctors held animosity towards [the plaintiff] . . . and to use that sentiment alone to deny substitution. Instead it is more proper to notice, as the district

-12-

court did, that all of the complained of acts were the very sort that the defendants conducted during a regular work day." Id. at 325.

Plaintiff also emphasizes that Defendant Pearson's alleged tortious acts departed from established procedures, reflected unprofessional conduct, and lacked authorization from his employer to support that they occurred outside the scope of employment. (See Docket Entry 18 at 4-7.)  The Fourth Circuit, however, has specifically rejected Plaintiff's line of reasoning:

> "Few government authorities are authorized to commit torts as part of their line of duty, but to separate the activity that constitutes the wrong from its surrounding context - an otherwise proper exercise of authority — would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus the defense would apply only to conduct for which its not needed."

Maron, 126 F.3d at 325 (quoting Johnson v. Carter, 983 F.2d 1316, 1323 (4th Cir. 1993), overruled on other grounds by, Gutierrez de Martinez, 515 U.S. 417).  Rather, "[i]n determining liability, the critical question is whether the tort was committed in the course of activities that the employee was authorized to perform." White v. Consolidated Planning, Inc., 166 N.C. App. 283, 298, 603 S.E.2d 147, 157 (2004) (emphasis added).  Thus, this Court (per United States District Judge James A. Beaty, Jr.), concluded that, under North Carolina law, a supervisor who allegedly committed three successive batteries on an employee acted within the scope of his

-13-

federal employment (with the United States Postal Service) because the batteries occurred within the context of an ongoing, work-related argument.  Lee, 171 F. Supp. 2d at 576-577.

In this case, the Court should similarly conclude that Defendant Pearson's alleged torts occurred in the course of his authorized duties, even though the VAMC did not authorize him to commit tortious acts.  The discussion of patient care in the operating room, the reviewing of patient charts, the reporting of purported misconduct by a co-worker, and the discussion of work-related conduct in a personnel meeting all reflect the ordinary duties of a VAMC doctor, even if, as Plaintiff alleges, Defendant Pearson did not perform such duties in an authorized manner.  In sum, Plaintiff has not met her burden to come forward with "specific evidence or the forecast of specific evidence," Guitierrez de Martinez, 111 F.3d at 1155, to refute the government's characterization of the alleged tortious acts as the escalation of a work-related conflict.

Nor has Plaintiff raised any material factual dispute warranting discovery or a hearing.  See id. (affirming district court's decision not to allow discovery and hearing where the plaintiff did not identify "any specific evidence that could be uncovered by further discovery beyond the speculative possibility of inconsistency"); Lee, 171 F. Supp. 2d at 575 n.7 (declining to hold a hearing and instead reviewing scope-of-employment

certification based on pleadings and sworn statements).  For these reasons, the Court should deny Plaintiff's instant Objection and should uphold the substitution of the United States for Defendant Pearson.

## CONCLUSION

Plaintiff has failed to establish grounds for relief under 28 U.S.C. § 2679(d).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Objection to Notice of Substitution and Request for Hearing Regarding United States Attorney's Certification (Docket Entry 13) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the United States be substituted as a party Defendant for William F. Pearson, M.D.

                                    /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                             **United States Magistrate Judge**

August 6, 2014